Harold NETHERCUTT and Charles T. PAYNE *v.*
PULASKI COUNTY SPECIAL SCHOOL DISTRICT

5-5692 475 S.W. 2d 517

Opinion delivered January 24, 1972

*Warren & Bullion,* for appellants.

*Terral, Rawlings, Matthews & Purtle,* for appellee.

Conley Byrd, Justice. Appellants Harold Nethercutt and Charles T. Payne were assistant superintendents under contracts of employment with appellee Pulaski County Special School District for the twelve months from July 1, 1968, to June 30, 1969. Both had been so employed on year to year contracts for a number of years. In January of 1969, it became apparent that Superintendent Leroy Gattin's contract would not be renewed. At the same time appellants learned that there was some question whether their contracts would be renewed. Some of the school board members took the position that selection of assistant superintendents should be left up

to the incoming superintendent, Dr. Heidbrink. However it does not definitely appear that appellants were fully aware of the board's position. From January to the end of their contract term appellants regularly attended the public school board meetings. They admittedly expressed their professional opinion that Mr. Gattin was a competent superintendent. After it became public knowledge that Mr. Gattin's contract would not be renewed and before Dr. Heidbrink was selected, one of the appellants was reported in a local newspaper as having pointed his finger at one of the board members and having told the board member that he was "nit picking." On March 12, 1969, Superintendent Gattin by letter notified appellants that five members of the board had said they would not vote to renew their contracts. Finally on June 3, 1969, the superintendent, as directed by the board, formally notified the appellants in writing as follows:

> "At a regular meeting of the Pulaski County Special School District Board on April 8, 1969, the majority of the Board voted not to renew your contract for the 1969-70 school year for the following reasons: 'It is the opinion of the majority of the Board that it is in the best interest of the Pulaski County Special School District and that it is in the opinion of the majority of the Board that your services have been inefficient and incompetent.' Sincerely yours, Leroy Gattin, Superintendent of Schools."

In their actions against the board for reinstatement appellants alleged that effective July 1, 1968, the board had adopted a teacher tenure policy, that the teacher tenure policy became a part of their contract, and that the board did not comply with the teacher tenure policy in terminating their contracts. The teacher tenure policy adopted by the board is:

> "All certified personnel entering the Pulaski County Special School District are on probation until they have served under an annual contract for three consecutive years and have been elected for their fourth contract. Upon completion of this probationary

period and the receipt of the fourth contract, all certified personnel become entitled to tenure status, in Pulaski County Special School District. Teachers who have taught three consecutive years prior to July 1, 1968 shall be said to have completed their probation. The three years service shall not include any years taught under an emergency certificate.

"The annual contract of all professional employees under tenure (except the Superintendent and certified personnel on probationary status) employed under the annual contract shall be renewed unless the following procedure has been pursued:

"1. Any person who, in the opinion of the Principal, Superintendent, or the School Board, is not rendering efficient and competent service or is insubordinate shall be given written notice of the particular respects in which such person is considered inefficient, incompetent, or insubordinate; and such person shall be informed by the Principal or Superintendent, in consultation, concerning any unsatisfactory rating which has been given with respect to such a person. The purpose of this notice shall be to give the person so notified the opportunity to remedy the alleged deficiencies.

"2. Any person notified under paragraph (1) who, in the opinion of the Principal, Superintendent and the Board of Directors, has not remedied the alleged deficiencies within 30 days of the notification shall be given:

a. A written notice of the alleged deficiencies which have not been remedied.

b. An opportunity for a hearing thereon before the Welfare Committee at a special meeting designated for this purpose. At the special meeting such person may have any representative or spokesman desired by him. The Welfare Committee shall consist of seven (7) persons chosen annually on or before July 1, as follows: Four teachers chosen by the

teachers, two principals chosen by the principals and one administrative staff. The members of the Welfare Committee shall present their advisory opinion at a meeting of the Board of Directors held before it reaches its decision on the termination of the contract.

c. An opportunity for a hearing thereon before the School Board at a special meeting designated for this purpose. At the special meeting such person may have any representative or spokesman desired by him.

"3. Not withstanding the foregoing provisions of this section the contract of any person serving under annual contract with the District who is suffering from mental or physical disability which renders the person incapable of performing the service contemplated under the contract or engages in immoral or licentious conduct prejudicial to the best interest of the school system may be terminated any time. However, his contract may not be terminated prior to his receipt of a reasonable notice of the specific charges, an opportunity for a hearing before the Board of Directors, at which hearing he may have any representative or spokesman desired by him.

"4. Any certified person having three consecutive years of service in Pulaski County Special School District and reemployed for the fourth year shall be granted tenure.

"5. The provisions of this policy shall be effective July 1, 1968."

Admittedly the board did not follow the provisions of the teacher tenure policy, but the minutes do show that after appellants had filed an action against the board, the board offered to give them a hearing. There is other evidence to the effect that the board suspended its rules before taking action in formally notifying appellants that their contracts would not be renewed.

Before trial of this action in the lower court, a school board election had been held at which Mr. Gattin was elected as a member of the board. After Mr. Gattin's election, Dr. Heidbrink was removed as superintendent. At the time of trial, Mr. Gattin was acting superintendent.

The trial courts jointly ruled that appellants had waived any rights they might have had by reason of their contracts and dismissed their action. For reversal, appellants contend that the teacher tenure provisions were part of their contracts; the provisions thereof were not followed; the board could not temporarily suspend the policies; they did not waive their rights; and that they were terminated without procedural due process.

We do not reach appellants' arguments because under the laws of this State a school board is a body corporate created by law and as such has no authority not conferred by law. The matter of teacher contracts or employment is controlled by Ark. Stat. Ann. § 80-1304 (b) (Supp. 1969) as follows:

"(b)   Every teacher in the State shall be employed by written contract. In districts which include cities of 10,000 or more population, according to the last Federal census, school boards may elect the superintendent for a period not to exceed 3 years. In other school districts employing a superintendent, school boards may elect the superintendent for a period of not to exceed 2 years. All other teachers and personnel of school districts shall be employed by written contract annually.

\*     \*     \*

"Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the school year next succeeding the date of termination fixed therein, which renewal may be made by indorsement on the existing contract instrument; unless during the period of such contract

or within ten (10) days after the termination of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year, or unless the teacher during the period of the contract or within ten (10) days after close of school shall deliver or mail by registered mail to such board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties. Provided that no contract for the succeeding school year shall be entered into between the school board and any person prior to the beginning of the second semester of the current school year. If a teacher quits or refuses to teach in accordance with his or her contract without just cause, he or she is hereby prohibited from teaching elsewhere during the time for which he or she had been employed. Provided, that nothing herein shall prohibit any school board from entering into a two [2] year or three [3] year contract as authorized in the first paragraph of this subsection."

As we construe this statute, a school board, as it may be constituted following any school election, is free to reemploy or terminate any teacher with or without cause. A school board, having only such authority as is granted it by law, cannot by the adoption of a teacher tenure policy give to a teacher a tenure beyond or greater than that authorized by the law limiting such employment to an annual contract.

Since the record admittedly shows that appellants received their statutory notice of termination within the time provided by law, it follows that their causes of action for reinstatement and damages were properly dismissed.

Affirmed.

JONES, J., concurs.

J. FRED JONES, Justice, concurring. I concur in the results reached by the majority in this case but I do so on the basis that the tenure policy did not become a part of the teaching contracts. I find no conflict between the provisions of the teacher tenure policy adopted by the board and Ark. Stat. Ann. § 80-1304 (b) (Supp. 1969) pertaining to teacher contracts.

As I interpret the statute, it simply provides for a renewal of the annual contract on the same terms and for the same salary unless written termination notice is given in advance by the school board or by the teacher as set out in the statute, or unless such contract is superseded by another contract between the parties.

When a principal, superintendent or a school board is of the opinion that a teacher is not rendering efficient or competent service, I find nothing in the statute that would prevent a school board from making a binding written contract with a teacher agreeing to advise her of such opinion and agreeing to give her an opportunity to remedy the inefficiency as well as giving her a hearing thereon, before they *would* fire her.

No such provision was contained in the written teacher contracts in the case at bar, so for that reason I also affirm.