**John E. CATO and Mrs. Lucille B. Cato, Plaintiffs,**

**v.**

**Morgan COLLINS, President of Forrest City Special School District No. 7, et al., Defendants,**

**Cecil Twillie and Howard C. Smith, Plaintiffs-Intervenors.**

**No. H–71–C–10.**

United States District Court, E. D. Arkansas, E. D.

April 1, 1975.

John W. Walker and Philip E. Kaplan, Little Rock, Ark., for plaintiffs-intervenors.

Harold Sharpe, Sharpe & Long, and E. J. Butler, Butler & Hicky, Forrest City, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

In this proceeding, the Court is again called upon to determine issues between claimants, and more specifically, plaintiffs-intervenors, Cecil Twillie and Howard C. Smith, and the Forrest City Special School District No. 7, Forrest City, Arkansas.[1]

---

1. See—McKisick v. Forrest City Special School District No. 7, 427 F.2d 331 (1970) ; Cooley v. Board of Education of Forrest City School District, 453 F.2d 282 (1972) ; Memorandum Opinion and Order in this case filed July 31, 1972; Order of the Court in this case entered May 24, 1973, Judgment and Distribution of Funds; Order in this case, May 24, 1973, requiring School District to establish objective nondiscrminatory standards in employment, assignment, promotion, demotion, or dismissal of teachers, etc.

This case was originally filed by the plaintiffs, John E. Cato and Mrs. Lucille B. Cato, for themselves individually and as a class action suit on behalf of all other persons similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. The claims of all parties, over a substantial period of time, and, after numerous evidentiary hearings, have been settled or otherwise disposed of, with the exception of the former school teachers, Cecil Twillie and Howard C. Smith.

In the Order entered by this Court on July 31, 1972, requiring, inter alia, that the Forrest City School District establish objective, nondiscriminatory standards in the employment, assignment, promotion, demotion, or dismissal, of teachers, including those assigned to specialty services such as principal, coaches, etc. . . ., the Court retained jurisdiction in all aspects of the proceeding for the effectuation of the Court's Order.

Although the litigation was filed and numerous aspects of it tried to the Court as a class action, Cecil Twillie and Howard C. Smith, as plaintiffs-intervenors, filed, on August 23, 1973, a Motion for further relief. In their Motion, Twillie and Smith allege that, at the time of their original intervention, they were both faculty members of the defendant School District.

As intervenors, they allege that on or about May 29, 1973, Howard C. Smith was informed that his contract for teaching services with the Forrest City School District for the year 1973–74 would not be renewed; and on or about June 5, 1973, Cecil Twillie was informed that his teaching contract for the year 1973–74 would not be renewed.

These intervenors further alleged that they were not afforded an opportunity for a hearing before the Directors of the Forrest City School District No. 7, prior to their having made such deter-

minations of non-renewal. Further, it is alleged that, subsequent to the non-renewal by the Directors, as set forth in their letters of May 29 and June 5, a hearing was held for both intervenors before the Directors of the Forrest City Special School District. Subsequently, they were advised, by the direction of the Directors of the Forrest City Special School District No. 7, that the previous action of not renewing their contracts was affirmed. It is further alleged that the failure to renew the contracts was occasioned by the intervenors' activities in prior phases of the litigation and was racial in motivation. They claim they were denied a pre-termination hearing in violation of their due process rights under the Constitution of the United States. They further contend that they were denied equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States. For relief, they ask to be reinstated as teachers by the Forrest City School District with all benefits and rights, including attorneys' fees.[2]

The defendants, on August 28, 1973, filed a Motion to dismiss the claim of Cecil Twillie and Howard C. Smith for further relief. It was the contention of the defendants that all alleged causes of action were finally adjudicated and concluded. The defendants further claim that this was not the proper proceedings wherein the plaintiffs-intervenors, Cecil Twillie and Howard C. Smith, were properly before the Court as an adjunct to this overall cause of action. The School District claims that the action of the intervenors should be brought in a new case. Pursuant to regularly scheduled hearing on August 28, 1973, the Court, being fully advised as to all matters, denied the defendants' Motion to dismiss the claim of Twillie and Smith. An Order was entered accordingly on August 29, 1973.

2. Cecil Twillie was included with a number of other teachers who received back pay for past discrimination in the settlement and judgment entered by the Court on May 24, 1973; Howard C. Smith, having been employed only two years as a teacher by the School District, was not included or entitled to any back pay in the settlement.

Subsequent to a pre-trial conference, regularly scheduled on February 19, 1974, the claim of the plaintiffs-intervenors, Twillie and Smith, was heard in a regularly scheduled evidentiary hearing commencing on March 18, 1974. The hearing continued through March 19, during which time numerous exhibits were entered, witnesses were heard, and a stipulation was filed by counsel on the part of the parties.

In the stipulation, it was agreed that the record of proceedings before the Board of the Forrest City School District No. 7, on June 29, July 11 and July 15, 1973, would be received as evidence to be considered by the Court in connection with the claims of Twillie and Smith. Following the evidentiary hearing, counsel for the parties were given an opportunity to submit briefs on the issue developed during the course of the proceedings. The Court has received excellent briefs on the questions developed at the hearing as to the respective position of the parties.

The Court also required the School Board to submit a report, pursuant to the previous Order of the Court entered July 31, 1972, for a determination of compliance with the Court's orders of nondiscriminatory acts in the operation of the Forrest City Schools.

On July 1, 1974, the defendant school district, by its attorney, submitted its report as required for the period of July 1, 1972, through April 30, 1974. It appears to be in compliance with the Court's Order of July 31, 1972. No objection has been made to the report. The Court, therefore, concludes that, with the adoption of objective nondiscriminatory standards in the employment, assignment, promotion, demotion or dismissal of teachers, including those assigned to specialty services such as principal, coaches and other such special duties, approved by the Court in its Order of May 24, 1973, and report of July 1, 1974, the School District is in compliance with the Court's memorandum opinion and Order of July 31, 1972, with the exception of the claims of Twillie and Smith, intervenors herein.

The claims of the plaintiffs-intervenors arose at the end of the school year of 1972–73 and prior to the filing, by the defendant School District, of the report referred to herein.

From the evidentiary hearing on the claims of Cecil Twillie and Howard C. Smith for further relief, which included ore tenus testimony of witnesses, numerous exhibits and the transcript of proceedings before the Board of Directors of the Forrest City School District No. 7, the Court concludes that there are two primary questions for determination, to-wit.

(1) The claims of Cecil Twillie and Howard C. Smith that the failure of the Board to renew their contracts to teach in the Forrest City Schools for the ensuing school year was due to racial considerations and activities, and

(2) Were the claimants Twillie and Smith denied due process and equal protection under the Fourteenth Amendment to the Constitution of the United States, and applicable statutes.

The Court will consider these questions in the order as stated above.

First, was the action of the School Board, in failing to renew the contracts of Cecil Twillie and Howard C. Smith to teach in the Forrest City Schools for the school year 1973–74, racially motivated or in any way tinged due to their race.

The intervenors, Twillie and Smith, have the burden of establishing by testimony a prima facie case against the defendants. If a prima facie case is established by the claimants, it then becomes the duty of the defendant School District to establish by the evidence that the action of the School Board was justified and in compliance with the orders of the Court and in no way was it racially motivated.

In its Order of July 31, 1972, the Court concluded that the defendant, Forrest City School District No. 7, had a long history of dual operated schools, segre-

gated by race. The Court enjoined the defendants, Forrest City School District No. 7, the Board of Directors, Superintendent, and all administrative staff in connection with the employment, assignment and direction of teachers, and staff personnel in the area of specialty assignments from further racial discrimination. Furthermore, the Court required the School Board to establish objective nondiscriminatory standards in the employment, assignment, promotion, demotion or dismissal of teachers or other personnel, including those assigned to specialty services which require extra and additional duties.

It is necessary, therefore, for the Court to review the record in order to make a determination as to whether the School Board, in terminating the services of the intervenors, Twillie and Smith, by failing to renew their contracts, acted in a manner contrary to the objective standards of the School District previously approved by the Court.

Both Cecil Twillie and Howard C. Smith are black persons. Cecil Twillie was first employed as a teacher in the Forrest City Schools for the school year 1962–63, at which time the School District was operating a dual system. He taught the 7th, 8th and 9th grades for several years and performed specialty service as coach of those students, for these grades, participating. At one time, he made an application for the position in the School referred to as Dean of Men. His application was not approved and, thus, he failed to receive the promotion it would have afforded him. He testified that the Superintendent of Schools mentioned to him, in connection with his application, his participation in a racial incident in 1969. He further stated that he was accused of not "holding up for the school".

The Superintendent of Schools testified that Mr. Twillie did file with him an application for the position but, at that time, the vacancy had already been filled. However, the Superintendent further testified that Mr. Twillie was offered promotion to assistant basketball coach and assistant football coach in the high school. However, Twillie turned the offer down on the basis that he preferred the position of head football coach in the high school. The Superintendent also testified that, although Mr. Twillie was qualified for head basketball coach, he did not have the qualifications to head the Athletic Department as head football and basketball coach. The testimony established that Mr. Twillie made substantial progress during the ten years he was associated with the Forrest City Schools. He was promoted from the grade school athletic program in the specialty field to the high school. According to the Superintendent of Schools, he performed creditably in his job at the end of the 1972 school year.

The testimony also established that the School Board renewed the contract of Mr. Twillie, as a teacher and athletic instructor within the School District for a period of three years after the 1969 racial incident referred to by him. Notwithstanding this fact, he strongly contends that the reason for his termination by the School Board at the end of the school year in 1973 was due to his participation and activities in connection with the civils rights movement in Forrest City and, specifically, during the school year of 1968–69.

It is an established fact that the claimant Twillie supported and participated in the civil rights movement which culminated in a meeting on February 2, 1969, with the Committee for Peaceful Co-Existence in Forrest City, Arkansas. The meeting was held at the Church where the Reverend J. F. Cooley was the Pastor and one of the principal leaders in the civil rights movement in that community. Reverend Cooley was, at that time, a teacher in the Forrest City Schools. He was dismissed as a teacher by the School Board at the mid-term of the school year 1968–69. See Cooley v. Board of Education, supra.

After a long history of operation of its schools as a dual school system, the For-

rest City Special School District No. 7 had its first year of operations as a fully integrated school system, pursuant to the orders of this Court, for the school year 1970–71. This was two years after the incident which Mr. Twillie claims was the primary reason that his contract was not renewed for the 1973–74 school year. It is established, and admitted, that his contract was renewed for the school year 1969–70, prior to the first year in which the school was fully integrated, and three times since integration, 1970–71, 1971–72 and 1972–73.

No testimony was presented during the trial that he experienced any difficulties or suffered in any way by the action of the Board or school administrators during those four years. On the other hand, he enjoyed promotion and was permitted to advance in the educational program in which he was most interested, athletics.

He became head basketball coach of the Junior High School. During the 1972–73 school year, one of the students voluntarily dropped out of the basketball program, but failed to report, as required, to a weight lifting class. The Principal of the Junior High School did not recommend dismissal or suspension of the student from the school. Mr. Twillie, as coach and assistant to the Principal, had an understanding with the Principal that, rather than being suspended from school, the student would be permitted to reenter the basketball program, with certain restrictions. The student would not be eligible or permitted to play in any regularly scheduled basketball games, but would be permitted to play in the State Tournament. Notwithstanding these specific instructions, Coach Twillie permitted the student to play in two regular games. By administrative action, the student was then removed from the basketball team and declared ineligible for the State Tournament.

The State Tournament was conducted under the auspices of the Arkansas Activities Association and held in Hot Springs, Arkansas. Previous to the tournament, the participating schools were required to send in the names of the players that would participate in the tournament. Although fully aware that he was ineligible to play in the State Tournament, Coach Twillie included the name of the dismissed student in submitting the names of those who would participate. It developed that the dismissed student was not permitted to go to the tournament. However, the coach permitted another student to play under the name of the dismissed student.

Regardless of the reasons for doing so, the playing of a student under an assumed name is contrary to established rules of the Forrest City and other schools and of the Arkansas Activities Association. By doing so, not only was the school subjected to sanctions, but the student playing under an assumed name could very well lose his amateur standing and become ineligible to play in further junior or senior high school athletic events.

The Principal of the Forrest City Junior High School became quite concerned and disturbed over the fact that Coach Twillie would deliberately involve the school with such an inexcusable action. Because of this conduct and the irregularity, contrary to specific instructions, the Principal recommended to the Superintendent of Schools and to the Board of Education of the Forrest City School District that they take such action as deemed necessary.

In the meantime, there was an investigation of the incident that occurred at the State Tournament. The testimony disclosed that, during the investigation, Twillie took sick leave even though there was testimony that he made one or more trips to Little Rock. Although the Arkansas Activities Association raised the question of the violation, by letter to the school, there was no testimony that the school suffered sanctions as a result of it. It appears that it was a question left to the discretion of the school. When he was called on to explain the incident of permitting the ineligible student to play

in the two regular games and permitting another student to play under the name of the dismissed student at the tournament, Mr. Twillie admitted that these incidents did occur and that he assumed full responsibility for them.

■ Considering the background of undisputed facts as to Mr. Twillie's employment in the Forrest City Schools from 1968 through the school year 1972–73, and his conduct during the regular 1973 basketball season of permitting the restricted player to play in two regular games, contrary to specific instructions, together with his conduct and demeanor in connection with the State Tournament, contrary to school policy, the Court can only conclude that the reasons for his termination were insubordination and failure to follow directions and instructions, as given to him, by his Principal on important school policy. The testimony fails to disclose that his services were terminated as a result of his civil rights activities in 1968–69 or motivated in any way due to race, color or national origin.

The plaintiff-intervenor, Howard C. Smith, was first employed by the Forrest City School District as a math teacher for 1970–71. His contract was renewed for the school year 1971–72, and, again, for the school year 1972–73. He had previously taught school at Crawfordsville, Arkansas, and, perhaps, other places.

It was established procedure in the Forrest City Schools that all teachers would receive an evaluation of their work twice each year. This generally was in December and in April or May. The Assistant Superintendent of Schools, Mr. Prewett, had the responsibility for evaluation of teachers as to their work progress. The Principal first would make evaluations of teachers in their respective grades. Exhibits were received during the evidentiary hearing of such evaluations. Accordingly, Mr. Smith received evaluations for the years he taught in the Forrest City Schools. As a result of the evaluations, the Principal would have interviews at which time there would be a discussion in those areas in which it was thought that the teacher should improve.

The evaluation reports of Mr. Smith prompted interviews with his Principal. The conferences with him failed to result in any noticeable improvement in his teaching duties. Some reports concluded that he was uncooperative and, specifically, refused to participate in extracurricular activities or other assignments as required of the other teachers.

His objection to participating in any form of service in connection with athletic events was recognized. He was given the opportunity of providing a substitute; invariably, the substitute failed to perform. He was assigned to other special duties which he failed to perform.

There was included in the record an exhibit referred to as the "Hawley" report. At a subsequent time, during his teaching experience, there was what was referred to as the "Collins" report. These reports pointed out the areas wherein Mr. Smith was lacking in his duties and provided the basis for conferences with a view of improvement in his teaching and cooperation in other responsibilities.

The deficiencies developed during his first year as a teacher; his Principal advised him wherein he should improve his work. He had similar experiences in the second year. Although, it was pointed out wherein he should improve, he failed to respond. With reference to the apparent lack of cooperation, Mr. Smith explained that, due to his religious belief, he could not participate in anything that had to do with competitive athletics. The teachers were called upon to perform certain duties in connection with athletic events held at the school; in recognition of his feelings toward such events, efforts toward adjustments in some other type of activities failed to produce satisfactory results.

His immediate Supervisor, Mr. Collins, was of the opinion, at the end of his first school year, due to his evaluation reports, that he should not be reemployed.

He recommended to the Superintendent and School Board that Mr. Smith's contract not be renewed for the second year. Nevertheless, the Superintendent of Schools and the School Board renewed his contract with the view that he should have an opportunity to improve his work as a teacher and his relationship with the school.

At the end of the second year, his Principal, again, recommended that his contract not be renewed, calling to the attention of the Superintendent that the evaluation reports showed insufficiency in the performance of his duties. Nevertheless, the Superintendent recommended to the School Board, and the School Board approved, the renewal of his contract for the third year. Due to the reports, the Assistant Superintendent, Mr. Prewett, on May 14, 1973, assembled all information from the evaluation reports since Mr. Smith started teaching, and the records of his experiences with the school, and submitted it for the information of the School Board in consideration of renewing Mr. Smith's contract for the year 1973–74. This led to the Superintendent advising the School Board that his contract should not be renewed for the ensuing year. In consideration of the recommendation and the records presented to the Board, his service as a teacher was terminated.

■ Although, the Court concludes that Mr. Smith was justified, due to his honest convictions, in declining to participate in extracurricular duties in connection with athletic events, there were other duties and activities which he could have performed, as pointed out by the testimony, which would have been comparable to requirements of other members of the faculty as extracurricular activities.

■ From the evidence presented as to Mr. Smith's claim, the Court concludes that his contract for the year 1973–74 was not renewed as a result of his deficiencies as a teacher, revealed in the numerous evaluation reports, and not, in any way, by inference or otherwise as a result of race or racial considerations.

As to the second issue of the claimants, Twillie and Smith, being denied due process and equal protection under the Fourteenth Amendment to the United States Constitution, and applicable statutes. Act 74, "An Act to Prescribe a Public School Fair Employment and Dismissal Practices", (§§ 80–1243—80–1248, Ark.Stats.Anno.) provides, inter alia, that:

"When a local school board terminates or dismisses a teacher, the board shall notify the teacher in writing, and if the board determines not to renew the contract of a teacher for another academic year, it shall notify the teacher thereof in the manner and within the time prescribed by § 80–1304, Ark.Stats. . . ."[2]

Section 80–1246, Ark.Stats.Anno. provides that:

"Any teacher who is dismissed or terminated, or whose contract is not renewed for the next academic year, and who is notified thereof by the school board in the manner prescribed by law, may file a written request with the board for a hearing. Such writ-

2. Section 80–1304, Ark.Stats.Anno., provides:
"* * * *
Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the school year next succeeding the date of termination fixed therein, which renewal may be made by indorsement on the existing contract instrument; unless during the period of such contract or within ten (10) days after the termina-

tion of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year, or unless the teacher during the period of the contract or within ten (10) days after close of school shall deliver or mail by registered mail to such board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties. . . ."

ten request for a hearing shall be sent by certified mail to the president of the school board, with a copy to the superintendent, within thirty (30) days after the written notice of dismissal or termination of contract is received by the teacher.

The hearing before the school board shall be conducted in accordance with the following provisions:

(a) The hearing shall take place not less than five (5), nor more than ten (10) days after the written request therefor has been served on the school board, except that the teacher and the school board may, in writing, agree to a postponement of such hearing to a date agreed to by the school board and the teacher.

(b) The hearing shall be private unless the school board or the teacher shall request that the hearing be public, in which case a public hearing shall be held at the request of the school board or the teacher.

(c) The teacher and the school board may be represented by legal counsel.

(d) It shall not be necessary that a full record of the proceedings at the hearing be made and preserved unless:

(1) The school board shall elect to make and preserve a record of the hearing, at its own expense, in which event a copy thereof shall be furnished the teacher, upon request, without cost to the teacher,

(2) A request is filed with the school board by the teacher in writing at least 24 hours prior to the time set for the hearing, in which event the school board shall make and preserve, at its own expense, a record of the hearing, and shall furnish a copy thereof to the teacher without cost to the teacher."

At the commencement of the trial to the Court, March 18, 1974, counsel for the parties entered into a stipulation, as follows:

1. On June 2, 1973, intervenor, Howard Smith, received a letter dated May 29, 1973, from William Irving, Superintendent of defendant School District, in which he was notified that his teaching contract for the school year 1973–74 was not renewed. (Exhibit #1) Included with the letter was a statement, of the Board of Directors, of the reasons for their action for not renewing Mr. Smith's contract. (Exhibit #1–A)

2. On June 6, 1973, intervenor, Cecil B. Twillie, received a letter dated June 5, 1973, from William Irving, Superintendent of defendant School District, that his contract for the school year 1973–74 would not be renewed. (Exhibit #2) Included with the letter to Mr. Twillie was a copy of a statement giving the reasons of the Board of Directors for not renewing the contract. (Exhibit #2–A)

3. Thereafter, in accordance with the provisions of § 80–1246, Ark.Stats. Anno., 1947, as amended, intervenors, Howard Smith and Cecil B. Twillie, filed a written request for a public hearing and that a full record of the proceedings at the hearing be made and preserved.

4. Thereafter, by agreement of the intervenors, Howard C. Smith and Cecil B. Twillie, and defendants, public hearings were held at Forrest City, Arkansas, on the following dates: June 25, 1973, July 11, 1973, and July 25, 1973. A written record was made of each hearing at the expense of defendant School Board and a copy thereof was furnished to intervenors, Howard Smith and Cecil B. Twillie, without any cost to said intervenors.

5. An August 15, 1973, intervenor, Howard Smith, received a letter dated August 14, 1973, from William Irving, Superintendent of defendant School District (Exhibit #3) wherein the defendant School District notified intervenor, Howard Smith, that defendant School District affirmed its original action which was taken on May 14,

1973, to the effect that intervenor, Howard Smith's, contract was not to be renewed.

6. On August 15, 1973, intervenor, Cecil B. Twillie, received a letter dated August 14, 1973, from William Irving, Superintendent of defendant School District, (Exhibit #4) wherein defendant School District affirmed its original action which was taken on June 4, 1973, to the effect that intervenor, Cecil B. Twillie's, contract for teaching services for the school year 1973–74 was not to be renewed.

The Court has had the benefit of the transcript of the record made during the course of the hearings before the School Board wherein numerous witnesses were called by the School Board in support of the action of the Board in its decision to not renew the teaching contracts of Messrs. Smith and Twillie for the school year 1973–74.

The basis for not renewing the contract of intervenor, Howard C. Smith, as given by the Board, was:

Insubordination and failure to carry out instructions and assignments;

Failure to properly communicate and instruct students in subject taught;

Unsatisfactory evaluation of teaching performance;

Recommendation by Principal that Mr. Smith not be rehired due to evidence of resentment, lack of cooperation and lack of professional qualities; and

Smith's refusal to perform assigned duties at athletic activities as other teachers.

The basic for not renewing the contract of intervenor, Cecil Twillie, as given by the Board, was:

Insubordination and failure to follow directions and instructions as given by Principal as related to basketball program;

Failing to comply with policy requirement, as agreed and approved by the Principal, Assistant-to-Principal, and Mr. Twillie;

Playing a student under an assumed name in the State Tournament, that is under the name of a dismissed student; and

Recommendation by Principal of Forrest City Junior High School.

At each hearing provided by the Board, intervenor Smith and intervenor Twillie were present and represented by their attorney, Mr. Philip E. Kaplan. Numerous witnesses testified, under oath, which, generally, was directed to the issues of inefficiency, insubordination and misconduct toward both intervenors. There was substantial questioning by counsel for the intervenors.

After the conclusion of the testimony of witnesses called in behalf of the District, intervenors were invited to present testimony on their behalf. Messrs. Smith and Twillie declined to testify or to present any testimony in their behalf except one witness, who testified to Mr. Smith's activities in their Church of God in Christ.

At the conclusion of the rather substantial hearings, the Board of Directors of the defendant School District retired to consider the questions presented during the course of the hearings. Subsequently, their decision was included in letters which the Board directed to Messrs. Smith and Twillie, dated August 14, 1973.

In its Memorandum Opinion and Order, entered July 28, 1972, the Court noted that jurisdiction was established in this proceedings under the provisions of 28 U.S.C.A. § 1343(3)(4), and 28 U.S. C.A. § 2201. In addition, jurisdiction is established under the provisions of 42 U.S.C.A. § 1983, seeking to redress the deprivations under color of law of rights, privileges and immunities secured under the Constitution and laws of the United States; specifically, the rights, privileges and immunities sought to be redressed are those secured by the due pro-

cess and equal protection clauses of the Constitution of the United States.

The primary issue, as contended by the plaintiffs-intervenors, is that the School Board made its determination to not renew the contracts prior to the hearings by the School Board, pursuant to §§ 80–1243—80–1246, Ark.Stats.Anno. The implication by the plaintiffs-intervenors' contention is that the School Board had already made its decision and, therefore, the hearings conducted by the School Board were merely an effort in futility. The plaintiffs-intervenors do not contend that the requirement of the statute was not met in each of its provisions, step by step.

There has been no contention that the procedural requirements of the statute Ark.Stats.Anno. §§ 80–1245, 80–1246) are unconstitutional. As pointed out in Appler v. Mountain Pine School District, (1972) 342 F.Supp. 1131, 1138, the statute merely outlines a procedure to be followed in determining whether, under the due process clause of the Fourteenth Amendment, the decision of the School Board not to retain a teacher is based wholly upon unsupported facts, or on a basis wholly without reason, or on the exercise by the teacher of a constitutionally protected right.

A similar question was considered by our Eighth Circuit Court of Appeals of recent date, November 28, 1973, in the case of Scheelhaase v. Woodbury Central Community Sch. Dist., 488 F.2d 237 (1973). There, the question concerned the continued employment of a non-tenured teacher under Iowa law, which is similar to Arkansas law. The Court held:

"The trial court was correct in holding that the matter of employment of teachers lies wholly within the discretionary power vested in the board of directors. This conclusion is borne out of the following authorities: Section 12441, Code, 1935; 38 C.J. pages 689, 691, 695; Neilan v. Board of Di-

rectors, 200 Iowa 860, 205 N.W. 506; Drew v. School District, 146 Iowa 721, 125 N.W. 815 * * *. (276 N.W. at 39 [Driver v. Independent School District of Sioux City, 224 Iowa 393, 276 N.W. 37].)" p. 241.

As further noted by the Court, the function of the Board of Education under applicable law is to further the best interests of that segment of the state's educational system entrusted to its care, including within such function the employment of teachers. In the performance of its duties, the Board is empowered to act in accordance with its best discretion. It is possible that the discretion of the Board may, at times, to those more generously endowed, seem to have been exercised with a lack of wisdom. However, the Board's decisions in the exercise of its discretion are not vulnerable to our (the Court's) correction merely if they are "wrong", sustainable only if they are "right".

The Supreme Court of Arkansas considered the teacher-tenure policy adopted by the School Board, fixing the rights of parties in controversies between the District and teachers under hiring or rehiring practices in relation to Ark. Stats.Anno. § 80–1304(b), and concluded:

"As we construe this statute, a school board, as it may be constituted following any school election, is free to reemploy or terminate any teacher with or without cause. A school board, having only such authority as is granted it by law, cannot by the adoption of a teacher tenure policy give to a teacher a tenure beyond or greater than that authorized by the law limiting such employment to an annual contract." Nethercutt v. Pulaski County Special School District, (1972) 251 Ark. 836, 475 S.W.2d 517; See Johnson v. Wert, 225 Ark. 91, 95, 279 S.W. 2d 274, 276; Freeman v. Gould Special School Dist., 405 F.2d 1153, 1158 (8 Cir. 1969).

In Gould, supra, our Eighth Circuit Court of Appeals addressed itself to the identical question. It is stated:

"While the school boards in Arkansas have the right to decide whom they are going to employ or re-employ, the basis for failing to re-employ must not be on impermissible constitutional grounds. [Citing Cases].

In Arkansas the board's right not to rehire a teacher in the school district appears to be absolute, except that the decision must not rest on grounds that are violative of constitutional or legal rights. The plaintiffs in the District Court, after presenting all of their evidence, argued that as a matter of federal due process they had a right to have their contracts renewed and to receive damages for the failure to renew. They predicated their claim on Slochower v. Board of Higher Education of New York City, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) and Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).

\* \* \* \* \* \*

Almost all of the cases cited in support of plaintiffs' position are concerned with either racial discrimination or an invasion of a constitutionally protected right or privilege by way of a statute or regulation. We agree that the teachers are protected under the Equal Protection Clause from discrimination on account of race or religion or in their assertion of constitutionally protected rights, but no case cited by plaintiffs has gone so far as to say that all actions of any governmental board or agency in employment cases must accord the individual due process under the Fourteenth Amendment so as to provide tenure and a right to retain the position, except for cause. And 'for cause' presupposes a right to hearing, notice and appeal. Many government employees are under civil service and some under tenure. Absent these security provisions a public employee has no right to continued public employment, except insofar as he may not be dismissed or failed to be rehired for impermissible constitutional reasons, such as race, religion, or the assertion of rights guaranteed by law or the Constitution." pp. 1158–59

It is well established law that school boards are representatives of the people and should have wide latitude and discretion in operation of the School District, including employment and rehiring practices. Local autonomy must be maintained to allow continued democratic control of education as a primary state function, subject only to clearly enunciated legal and constitutional restrictions. See Scheelhaase, supra, 488 F.2d at pp. 243–244.

In a concurring opinion, Circuit Judge Bright, in Scheelhaase, supra, at page 245, included:

"The Board was entitled to reply upon the recommendation and conclusions of its Superintendent, notwithstanding the existence of strong opinions contrary to his regarding the use of the ITBS or ITED tests as a tool for teacher evaluation. Given a choice between experts, the Board was entitled to rely upon its own. \* \* \* But in the Woodbury School District, based upon his education and training, the Superintendent arrived at a contrary determination relating to students in Mrs. Scheelhaase's class. Thus its decision, even though premised upon an apparently erroneous 'expert opinion' cannot be faulted as arbitrary and capricious. The Board's mere mistake in judgment or in weighing the evidence does not demonstrate any violation of substantive due process.

The Superintendent and the Board for the Woodbury, Iowa, Central Community School District possessed the right and responsibility of evaluating its teacher personnel, and such evaluations, where they are based on some evidence, even though possibly erroneous, will not serve to make those de-

terminations subject to judicial review as unconstitutionally arbitrary and capricious."

■ The Court, therefore, concludes that the defendant, Forrest City Special School District No. 7, followed the governing statute of Arkansas providing for a hearing, which the plaintiffs-intervenors, Smith and Twillie, had. With the rather substantial record developed in this case, and considering the evidence in relation to the applicable law, the Court is persuaded that there has been no violation of the plaintiffs-intervenors' civil rights nor a federal due process issue presented.

The Court does not think, on this record, that the School Board was capricious or arbitrary in its attempt to resolve the internal dispute between the teachers and the Superintendent and Principals of the Forrest City schools. It is the Court's feeling that the administration of the internal affairs of the School District in this case "has not passed by judicial fiat from the local board, where it was lodged by statute, to the Federal court. Such matters as the competence of teachers, and the standards of its measurement are not, without more, matters of constitutional dimensions. They are peculiarly appropriate to state and local administration." See Woodbury, supra, at page 244 of 488 F.2d.[3]

This opinion incorporates the findings and conclusions of the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure. An Order will be entered in accordance with this opinion, dismissing the complaints of plaintiffs-intervenors, Cecil B. Twillie and Howard C. Smith.

3. Counsel for the intervenors-plaintiffs has called to the attention of the Court a recent opinion from the Eighth Circuit in the matter entitled Wright v. Arkansas Activities Association, 501 F.2d 25 (1974), and contends that, inasmuch as the School District's main allegation for dismissal of Mr. Twillie had to do with this alleged violation of an AAA rule, the decision should be persausive for Mr. Twillie's request for relief. Counsel for the defendant School District has strongly contended that the action of the Board was not on the basis of a violation of a AAA rule but was based on Mr. Twillie's actions of insubordination and failure to comply with school policy. The Court does not attempt to reach this issue since there is nothing in the record to establish that the Arkansas Activities Association entered the internal affairs on the question by proposed sanctions or any action at all.