**John E. CATO and Mrs. Lucille B. Cato**

**v.**

**Morgan COLLINS, President of Forrest City Special School District No. 7, et al., Appellees,**

**Cecil Twillie, Appellant.**

**No. 75–1347.**

United States Court of Appeals, Eighth Circuit.

Submitted March 8, 1976.

Decided July 30, 1976.

Philip E. Kaplan, Walker, Kaplan & Mays, Little Rock, Ark., argued; and Jack Greenberg, James C. Gray, Jr., and Fredric Cowden, New York City, on brief, for appellant.

Harold Sharpe, Forrest City, Ark. (on brief) argued; F J. Butler, Forrest City, Ark., for appellees.

Before GIBSON, Chief Judge, and HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Cecil Twillie appeals from a judgment of the District Court denying his claim for reinstatement as a teacher in Forrest City, Arkansas, Special School District No. 7 with all benefits and rights, including attorneys fees. Appellant, an intervenor in the principal action,[1] asserted his claim in a "Motion for Further Relief". He bases his appeal from the denial of that motion on four grounds: (1) that he was deprived of due process by the failure of the school board to provide him with notice of and opportunity for a hearing prior to the board's decision not to renew his teaching contract; (2) that he was denied due process because the decision maker at the post-termination hearing was not impartial; (3) that he was deprived of due process by Ark.Stat.Ann. §§ 80–1245 and 80–1246, which he alleged were unconstitutional as applied; and (4) that the board's decision not to renew his contract violated his equal protection rights since that decision was based on racial motivations. Following careful examination of the record, we affirm the District Court.[2]

Appellant is a black teacher who was first employed by the school district during the 1962–63 school year and served as a teacher and athletic coach within the district until his dismissal at the conclusion of the 1972–73 school year. Prior to the 1970–71 school year, the district operated a dual system of schools. During this period, Twillie supported and participated in the civil rights movement in Forrest City and gave testimony at a trial involving a fellow teacher who had been dismissed because of participation in civil rights activities. His basic contention here is that his civil rights activities were the real reason for his dismissal rather than his insubordination, as the district contends. The facts surrounding this dispute are summarized below.

In the 1972–73 school year, appellant was the head basketball coach at Forrest City Junior High School. During the basketball season, Twillie asked one of the players on the team, who he felt was not fully participating in a practice session, to do some extra exercises. The player refused to do the exercises, left the practice session, and quit the team. When the player sought to be reinstated on the team, an understanding was reached between Twillie and the principal of the school that the player would be allowed to return to the basketball program, but with the express condition that he could not play in any of the remaining regular season games. Twillie instead played the student in two regular season games in order to determine if the student would be able to work with the team in the upcoming state tournament games.

When the principal learned that the student had been allowed to play contrary to the ground rules which the principal had

---

1. This case was originally filed as a class action against the school district, in which the District Court ordered the establishment of objective, nondiscriminatory standards in the employment, assignment, promotion, demotion, and dismissal of teachers and administrative officials. The District Court subsequently ordered the board to provide it with a report for a determination of the board's compliance with the court's order. *Cato v. Collins,* 394 F.Supp. 629, 632 (E.D.Ark.1975). The standards set forth in the report contained a listing of grounds for terminating a teacher, one of

which was insubordination. The District Court reviewed that report and was satisfied that the board was in compliance with its order. *Id.*

Our review of that report, which includes statistics relating to the composition of the district's faculty and staff, discloses no pattern of continued racial discrimination but rather a racially neutral system for acquisition and termination of staff.

2. The Honorable Oren Harris, Senior Judge, United States District Court for the Eastern District of Arkansas.

established, he informed Twillie that the student was not to play in any of the state tournament games and was to be dismissed from the team. Twillie complied with this order, but submitted to the tournament officials a list of players which included the name of the dismissed student. At the tournament, the student did not play, but another student did play in the games under the name of the dismissed student. Playing a student under an assumed name violated the rules of the state activities association; and the board, upon discovering the violation, reported the incident to the association.

On March 16, 1973, Twillie was informed by letter that the board was considering action as a result of the basketball incidents. On April 9, 1973, the principal sent a letter to the district superintendent informing him of the incidents and stated that Twillie's actions were, in his opinion, acts of insubordination, but that he would not make any recommendations as to what actions, if any, the board should take. On April 26th, the principal again wrote a substantially similar letter to the superintendent. Then on May 14th, the board informed Twillie in executive session that his teaching contract was still under consideration and had not yet been renewed because of the incidents. Finally, on June 6th, Twillie received a letter dated June 5th notifying him that his contract for the 1973–74 school year would not be renewed. The letter included a statement giving the reasons for nonrenewal. The reasons for nonrenewal, as summarized by the District Court, were:

Insubordination and failure to follow directions and instructions as given by Principal as related to basketball program;

Failing to comply with policy requirement, as agreed and approved by the Principal, Assistant-to-Principal, and Mr. Twillie;

Playing a student under an assumed name in the State Tournament, that is

under the name of a dismissed student; and

Recommendation by Principal of Forrest City Junior High School.[3]

*Cato v. Collins,* 394 F.Supp. 629, 638 (E.D. Ark.1975).

The decision not to renew the appellant's teaching contract was reached at a board meeting held in executive session on June 4, 1973, a meeting at which appellant was not present. Thereafter, in accordance with Arkansas law, appellant filed a request for a public hearing to reconsider the decision. The hearing was held on three dates, and the appellant was present at each hearing with counsel. The board produced various witnesses, but appellant did not testify or call any witnesses in his behalf. In August, 1973, the board again voted not to renew appellant's contract.

The District Court, after an evidentiary hearing, held that appellant had not been denied due process and that the nonrenewal of the contract was based upon appellant's insubordination and not upon racial motivations. *Cato v. Collins, supra.*

## I. DUE PROCESS CLAIMS

### A. Right to Pretermination Hearing

█ A state or public school teacher who is not formally tenured is entitled to procedural due process, and thus a pretermination hearing, only if the termination deprives the teacher of an interest in liberty or in property. *Brouillette v. Board of Directors,* 519 F.2d 126, 127 (8th Cir. 1975); *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196, 1199 (8th Cir. 1974). See *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). "Deprivation of an interest in liberty occurs where nonretention of the teacher imposes upon him a stigma or other disability foreclosing his future employment opportunities or resulting in significant damage to his standing and associations in the community." *Buhr v. Buf-*

---

**3.** The "recommendation", as developed in the principal's testimony, was simply: "As for

what action the Board takes on this I'll leave that to them."

falo Public School District No. 38, supra, 509 F.2d at 1199. We do not perceive any deprivation of an interest in liberty under the circumstances of this case.

◾ Nonrenewal of a teaching contract alone does not constitute a deprivation of an interest in liberty. *Board of Regents v. Roth, supra,* 408 U.S. at 574 n.13, 92 S.Ct. 2701; *Buhr v. Buffalo Public School District No. 38, supra,* 509 F.2d at 1199; *Calvin v. Rupp,* 471 F.2d 1346, 1348 (8th Cir. 1973). If, however, the reasons for nonrenewal are announced publicly or are incorporated into a record made available to prospective employers, the reasons may affect a teacher's chances of securing another job. *Buhr v. Buffalo Public School District No. 38, supra,* 509 F.2d at 1199; *Wellner v. Minnesota State Junior College Board,* 487 F.2d 153 (8th Cir. 1973). Cf. *Greenhill v. Bailey,* 519 F.2d 5, 7–8 (8th Cir. 1975). In this case, the record indicates that the reasons for the nonrenewal of appellant's contract were not publicized by the board nor incorporated into any employment record. The board informed appellant of the reasons for nonrenewal in a confidential letter and did not publicly announce those reasons. It was only at appellant's request that public hearings were held, where the circumstances surrounding and the reasons for nonrenewal became public information. Such disclosure of the reasons for nonrenewal at the

teacher's request cannot form the basis for an interest in liberty.[4]

◾ Likewise, we do not perceive any deprivation of an interest in property in the circumstances of this case. Whether or not appellant's interest in continued employment constitutes a constitutionally protected property interest is to be determined under applicable state law. *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. 2701; *Buhr v. Buffalo Public School District No. 38, supra,* 509 F.2d at 1203–04. Arkansas does not have a statute providing public school teachers with formal tenure. See *Freeman v. Gould Special School District of Lincoln County, Arkansas,* 405 F.2d 1153, 1158 (8th Cir.), *cert. denied,* 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969); *Nethercutt v. Pulaski County Special School District,* 251 Ark. 836, 841, 475 S.W.2d 517, 521 (1972); *Johnson v. Wert,* 225 Ark. 91, 95, 279 S.W.2d 274, 276 (1955). Instead, it has a "continuing contract" statutory system which provides for the automatic renewal of each teacher's annual contract absent affirmative action by the school board. See Ark.Stat.Ann. § 80–1304(b).[5] The same title of the Arkansas statutes, however, provides for a special procedure to be followed in the event a board decides not to renew a contract. See Ark.Stat.Ann. §§ 80–1245 and 80–1246.[6] These statutory provisions

---

**4.** No stigma has apparently attached to appellant as a result of the nonrenewal decision since, as counsel has informed us at oral argument, he subsequently took a job as head of the Forrest City Recreational Department and now holds a head coaching job in Augusta, Arkansas.

**5.** That section provides in part:

Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the school year next succeeding the date of termination fixed therein, which renewal may be made by indorsement on the existing contract instrument; unless during the period of such contract or within ten (10) days after the termination of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address

by registered mail that such contract will not be renewed for such succeeding year, or unless the teacher during the period of the contract or within ten (10) days after close of school shall deliver or mail by registered mail to such board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties. Provided that no contract for the succeeding school year shall be entered into between the school board and any person prior to the beginning of the second semester of the current school year.

**6.** Section 80–1245 provides:

When a local school board terminates or dismisses a teacher, the board shall notify the teacher in writing, and if the board determines not to renew the contract of a teacher for another academic year, it shall notify the teacher thereof in the manner and within the time prescribed by § 80–1304, Ark.Stats. The board may include with such notice a

outlining the procedures for terminating a teacher's employment create "no expectation of continued reemployment and thus, no property interest requiring constitutional protection." *Brouillette v. Board of Directors, supra,* 519 F.2d at 127.[7] *See also Buhr v. Buffalo Public School District No. 38, supra,* 509 F.2d at 1200; *Scheelhaase v. Woodbury Central Community School District,* 488 F.2d 237 (8th Cir. 1973), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974). Neither do we find evidence in the record of any policies, practices, or "rules and understandings, promulgated and fostered by [the school] officials" that would justify a legitimate claim of entitlement to continued employment in appellant. *Perry v. Sindermann, supra,* 408 U.S. at 602, 92 S.Ct. at 2700.

Finding no deprivation of an interest in liberty or in property, we conclude that the appellant was not entitled to a due process pretermination hearing.

**B.  Impartial Decision Maker**

Appellant contends that he was deprived of due process at the post-termination hearings because the board had prejudged the facts of his case and therefore denied him an impartial decision maker. He argues that the board's prior contact with the case and its prior decision on June 4th to not renew his teaching contract prevented it from acting impartially at the hearings. We disagree.

In *Swab v. Cedar Rapids Community School District,* 494 F.2d 353, 354–55 (8th Cir. 1974), we rejected a similar contention

statement of the reasons for such termination or dismissal, or for the determination not to renew the contract of the teacher. If the board does not include such statement with the notice, the teacher may file a written request with the board within ten (10) days after receipt of the notice from the board, for a statement of the reasons of the board for such dismissal, termination or refusal to renew the contract. Upon receipt of such request in writing, the board shall, within five (5) days after receipt of the request, furnish to the teacher a written statement of the reasons for such dismissal or termination or decision not to renew the contract of the teacher.

Section 80–1246 provides:

Any teacher who is dismissed or terminated, or whose contract is not renewed for the next academic year, and who is notified thereof by the school board in the manner prescribed by law, may file a written request with the board for a hearing. Such written request for a hearing shall be sent by certified mail to the president of the school board, with a copy to the superintendent, within thirty (30) days after the written notice of dismissal or termination of contract is received by the teacher.

The hearing before the school board shall be conducted in accordance with the following provisions:

(a) The hearing shall take place not less than five (5), nor more than ten (10) days after the written request therefor has been served on the school board, except that the teacher and the school board may, in writing, agree to a postponement of such hearing to a date agreed to by the school board and the teacher.

(b) The hearing shall be private unless the school board or the teacher shall request that the hearing be public, in which case a public hearing shall be held at the request of the school board or the teacher.

(c) The teacher and the school board may be represented by legal counsel.

(d) It shall not be necessary that a full, record of the proceedings at the hearing be made and preserved unless:

(1) The school board shall elect to make and preserve a record of the hearing, at its own expense, in which event a copy thereof shall be furnished the teacher, upon request, without cost to the teacher,

(2) A request is filed with the school board by the teacher in writing at least 24 hours prior to the time set for the hearing, in which event the school board shall make and preserve, at its own expense; a record of the hearing, and shall furnish a copy thereof to the teacher without cost to the teacher.

7.  No claim was made at trial or on appeal that the procedures established in the Arkansas statute were not followed. *See Brouillette v. Board of Directors,* 519 F.2d 126, 128 (8th Cir. 1975). That appellant had no legitimate expectation of continued employment under the Arkansas system is reinforced by the Arkansas Supreme Court's opinion in *Nethercutt v. Pulaski County ·Special School District,* 251 Ark. 836, 841, 475 S.W.2d 517, 521 (1972), which invalidated a teacher tenure policy voluntarily adopted by a school board. The court held that the board, "having only such authority as is granted it by law, cannot by the adoption of a teacher tenure policy give to a teacher a tenure beyond or greater than that authorized by the law limiting such employment to an annual contract." *Id.*

and in so doing adopted the view of the Second Circuit in *Simard v. Board of Education*, 473 F.2d 988, 993 (2d Cir. 1973):

> The constitutional rule sought here would require that decisions as to teacher competence be surrendered to a body less familiar with relevant considerations and not responsible under state and local law for making these decisions. Moreover, it is unrealistic to require a Connecticut town to provide more than one body to deal with various aspects of school administration. We do not believe that due process, varying as it does with differing factual contexts, requires so much in this case, absent a showing of actual, rather than potential, bias.

There being no claim or evidence of actual, rather than potential, bias, the claim is without merit under the circumstances of this case. *See Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Barszcz v. Board of Trustees*, 400 F.Supp. 675, 679 (N.D.Ill.1975). *Cf. Wilson v. Lincoln Redevelopment Corp.*, 488 F.2d 339, 342–43 (8th Cir. 1973).

C. Constitutionality of Arkansas Statutes

Appellant contends that the Arkansas statutes providing for a post-termination hearing are unconstitutional as applied in his case because (1) they did not provide for a pretermination hearing prior to deprivation of his property interest in continued employment, and (2) they did not provide for an impartial decision maker.

■ First, the District Court stated in its opinion that "[t]here has been no contention that the procedural requirements of the statute (Ark.Stats.Anno. §§ 80–1245, 80–1246) are unconstitutional." 394 F.Supp. at 639. The failure of appellant to assert such contentions in the District Court precludes their assertion here. *See Harris v. Zurich Insurance Co.*, 527 F.2d 528, 532 (8th Cir. 1975); *Kreis v. Mates Investment Fund, Inc.*, 473 F.2d 1308, 1313 (8th Cir. 1973); *Ludwig v. Marion Laboratories, Inc.*, 465 F.2d 114, 117 (8th Cir. 1972).

Even were we to assume that the issue of the constitutionality of the statutes as applied was properly before this Court, no relief would be warranted. Our resolution of appellant's previous two claims with respect to a pretermination hearing and to the partiality of the board effectively disposes of any claim of unconstitutional action.

## II. EQUAL PROTECTION CLAIM

■ Appellant contends that the reasons given by the board for nonrenewal of his teaching contract—insubordination and violation of the state activities association rules—were pretextual and that the true reasons for nonrenewal were racial, stemming from his activities in the civil rights movement in Forrest City. The District Court rejected this contention and found that:

> [T]he reasons for [appellant's] termination were insubordination and failure to follow directions and instructions, as given to him, by his Principal on important school policy. The testimony fails to disclose that his services were terminated as a result of his civil rights activities in 1968–69 or motivated in any way due to race, color or national origin.

394 F.Supp. at 635. We review this finding under the clearly erroneous standard. *See Sheets v. Stanley Community School District No. 2*, 532 F.2d 111, 113 (8th Cir. 1976); *Adams v. Campbell County School District*, 511 F.2d 1242, 1246 (10th Cir. 1975); *Thomas v. Board of Education*, 457 F.2d 1268, 1270 (8th Cir. 1972).

■ Nonrenewal of a teacher's contract upon a racially discriminatory basis is clearly impermissible. *See Buhr v. Buffalo Public School District No. 38, supra*, 509 F.2d at 1201; *Freeman v. Gould Special School District of Lincoln County, Arkansas, supra*, 405 F.2d at 1159. Appellant cites principally several comments allegedly made by school officials and the rejection of his applications for two different positions followed by the hiring of white persons in those positions as evidence of such racial motivation. While there is testimony in the record which might arguably, in the context

of the particular circumstances of this school district, support an inference that the nonrenewal was based at least in part on racial motivations, there is substantial credible evidence that the nonrenewal was based on appellant's insubordination and violation of the association's rules. The District Court based its conclusions on this evidence, and "[r]easonable deference should be accorded the trial judge in his evaluation of the evidence, including any inferences to be drawn therefrom." *Sheets v. Stanley Community School District No. 2, supra,* 532 F.2d at 113.[8]

■ Upon a full review of the record, we conclude that the finding of the District Court that the nonrenewal of appellant's contract was based on his insubordination and violation of the association rules, and not on racial motivations, is not clearly erroneous.

The judgment of the District Court is accordingly affirmed.

---

8. The rejection of appellant's application for two positions, an assistant principalship and the high school head football coach position, followed by the hiring of white persons in those positions does not support a conclusion of racial discrimination, because in each case the appellant was not qualified for the position according to the standards promulgated by the board.

Appellant applied for the position of dean of men for the junior high school when it became vacant in the 1971–72 school year. He was qualified for that position. Instead of filling that vacancy on a permanent basis, the administration decided to adopt a system having various principals for each grade. The new position of assistant principal required educational qualifications not possessed by appellant. The white person hired for the position possessed those qualifications. With respect to the head coaching position, the school district's standards provided for certain experience requirements which appellant did not possess. These included experience in coaching at the high school level. The white person hired in the position had the requisite experience.

Finally, we are not persuaded by appellant's argument that the failure of the board to discipline the white assistant coach of the basketball team who accompanied the team to the state tournament evidences racial discrimination. The assistant coach was on the trip as a chaperone and did not assert or have any responsibility over the team.