**Mary APPLER, Plaintiff,**

v.

**MOUNTAIN PINE SCHOOL DISTRICT, Defendant.**

**No. HS–71–C–16.**

United States District Court,
W. D. Arkansas,
Hot Springs Division.

May 30, 1972.

**1132**

Eugene R. Warren, of Warren & Bullion, Little Rock, Ark., for plaintiff.

Curtis L. Ridgway, Jr., Q. Byrum Hurst, Hot Springs, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge (Sitting by Designation).

On May 4, 1972, plaintiff, Mary Appler, served and filed her motion for partial summary judgment of liability of defendant to plaintiff. The pleadings, admissions and affidavit of plaintiff attached to the motion show there is no genuine issue as to any material fact. The only question before the court is one of law. To fully present and consider the question, it seems necessary to briefly abstract the pleadings before setting forth the undisputed facts.

On September 9, 1971, plaintiff, Mary Appler, filed her complaint against the defendant, Mountain Pine School District, in which she alleged that she is a citizen of the United States and of the State of Arkansas; that she holds a teacher certificate issued by the Arkansas Department of Education based upon a B. A. degree; that she has 11 years experience as a teacher and has taught in the defendant School District for a period of four years.

That the defendant is a duly organized and existing school district in the State of Arkansas with power to contract and to sue and be sued.

That on April 11, 1970, the plaintiff, with three years' prior employment under contract as a teacher in the defendant District, entered into a Teacher's Contract to perform the duties of a teacher at the Mountain Pine High School for a period of 9 months, from July 1, 1970, to June 30, 1971, for a total compensation of $5,785.00. A copy of the written contract is attached to the complaint and made a part thereof by reference. That it was the normal practice of the defendant to renew successive annual contracts to teachers who perform their classroom duties in a proficient manner, and plaintiff relied on this practice and had a right to rely on it and to assume that she would be reemployed in view of her high performance as a teacher.

On April 19, 1971, the plaintiff received a letter from the defendant Board of Directors informing her that the defendant would not renew her contract for the 1971–72 school year. The complaint sets out in toto all of the correspondence and proceedings had between the plaintiff and the defendant beginning April 19, 1971, and terminating May 27, 1971, relative to the failure of the defendant to reemploy plaintiff. (The correspondence will be more fully referred to under the statement and discussion of the facts.)

The plaintiff alleged that "her contract was not renewed because of her exercise of constitutional rights of freedom of speech and expression and the exercise of the right of academic freedom. * * * The action of the Board in failing to reemploy or rehire plaintiff was arbitrary and capricious and not based upon her qualifications or performance as a teacher."

"Under the provisions of Act 74 of 1970 the defendant district was required to make a record of the proceedings at the hearing and plaintiff was entitled to a copy of the record. The defendant board failed and refused to have a record made of said proceedings and failed and refused to furnish the plaintiff a copy of said record, but instead furnished the plaintiff with a so-called Agenda prepared by the Board which does not conform to the evidence presented at the said board meeting. Such failure of an Administrative Board of a tax supported agency to follow a State procedural statute enacted for the

benefit of its citizens constitutes a denial of procedural due process as guaranteed to the plaintiff by the Fourteenth Amendment to the Constitution of the United States of America."

The plaintiff prayed for the following relief:

"1. That this court enter its declaratory judgment declaring:

"(a) That the termination of plaintiff's contract and refusal to grant plaintiff an annual contract is a violation of her constitutional right to freedom of speech and academic freedom.

"(b) That the failure to provide plaintiff with a proper record and a due process hearing is a denial of her right to procedural due process; and,

"(c) That the actions of the defendant were arbitrary and capricious in denial of substantive due process.

"2. That a mandatory injunction be issued ordering defendant to reinstate plaintiff in her same capacity and teaching position, and to grant her a new contract with full rights to tenure, normal salary increases and retirement and other benefits.

"3. That plaintiff be awarded such damages as may be established on hearing, including reasonable attorney's fees and her cost incurred herein."

On September 28, 1971, the defendant filed its motion to dismiss, and alleged that the court was without jurisdiction over the subject matter and that the complaint failed to state a cause upon which relief can be granted.

On December 13, 1971, the attorneys for plaintiff served and submitted a written brief in opposition to the motion to dismiss. A copy of the brief was also filed with the Clerk.

On January 26, 1972, Judge Harris entered an order overruling the motion to dismiss the complaint, and allowed defendant ten days after receipt of the notice of the court's action in which to file answer. On February 3, 1972, the defendant filed its answer in which it alleged "that its action in electing to not renew plaintiff's contract was for good cause shown and that the procedural requirements, as set forth in Act 74 of 1970, were substantially complied with."

On March 28, 1972, the writer advised the attorneys for the parties that he had accepted the assignment of this case for trial or other disposition.

A pretrial conference at Hot Springs, Ark., was set for April 20, 1972. When the case was reached on the call of the pretrial calendar, neither of the attorneys for defendant were present but responded immediately to a telephone call to appear for such conference. At the conference the issues were discussed, and since the record did not contain any brief or argument by defendant in support of the motion to dismiss, the court directed that the defendant submit a memorandum reflecting what the defendant did or failed to do to comply with the Arkansas law, which had been pleaded by plaintiff in her complaint.

On April 28, 1972, the judge wrote Mr. Curtis L. Ridgway, Jr., one of the attorneys for defendant, in which he referred to the fact that it was understood at the pretrial conference that he would submit a memorandum containing the facts regarding what occurred at the hearing before the School Board which resulted in the dismissal of plaintiff as a teacher in the Mountain Pine School District. In that letter the judge further stated:

"In paragraph III of your answer, you allege that the Board's action, 'in electing to not renew plaintiff's contract was for good cause shown and that the procedural requirements as set forth in Act 74 of 1970, were substantially complied with.' I understood at the pretrial that there was no dispute as to what actually occurred at the hearing, and apparently, on the question of liability, the court must determine whether the hearing was

sufficient to meet the requirement of due process.

"This is a matter of some public interest, and I shall appreciate your giving the matter your immediate attention."

On May 4, 1972, the court wrote Mr. Ridgway another letter as follows:

"I am in receipt of copy of the motion for partial summary judgment filed by plaintiff on May 4.

"Mr. Warren did not submit an additional brief in support of the motion since the brief that he submitted on December 13, 1971, in his opinion covers the issues raised by the motion for partial summary judgment.

"I would like to consider this question as soon as possible and shall appreciate it if you will advise whether you desire to submit a brief in opposition to the motion, and if you do, I hope you will be able to present it within one week."

The defendant has in no way replied to the letters or suggestions made by the court, and the court has no other alternative except to proceed to a consideration and determination of the plaintiff's motion for summary judgment.

Jurisdiction is established by 28 U.S. C.A. § 1343(3) and (4) and 42 U.S.C.A. § 1983.

The facts concerning this controversy are not controverted in any respect.

The plaintiff holds a teacher certificate issued by the Arkansas Department of Education, and has 11 years experience, four of which were in the school of defendant district, until her services were terminated by letter from the Board, heretofore referred to. In that letter the Board stated:

"This is to officially inform you that the Board of Directors of the Mountain Pine School District No. 46, Garland County, Arkansas, voted not to renew your contract for the 1971–72 school year."

On April 23, 1971, plaintiff replied as follows:

"In accordance with rights granted to me by Act No. 74 of the General Assembly of the State of Arkansas, I am requesting a statement of the reasons for nonrenewal of my teaching contract for the school year of 1971–1972."

On April 26, 1971, the School Board responded to the request of plaintiff, and advised her that they had considered the "following complaints as justification for by unanimous vote to not renew your 1971–72 teacher's contract":

"1. Grades for reporting periods and final semesters have not been consistent with normal grading procedures. Fluctuations of grade 'A' to 'F' are frequent for reporting periods with no apparent reason. Creating confusion among both students and parents.

2. Use of a different grading scale for determining grades also, inconsistent from student to student in method of determining grades, leaving the implication of partiality.

3. Candidates for graduation are in many cases apprehensive of not being able to graduate due to inconsistent grades for no apparent reason.

4. Critical and disrespectful of Lunch Program and personnel. Ridicule in presence of students has occurred repeatedly.

5. Inconsistent in dealing with behavioral problems. Impression of students and parents is unfair and partiality shown in treatment of individual cases—students have been ridiculed in the presence of classmates.

6. Slow learners are referred to as 'dumbbells,' and must be scheduled to other teachers.

7. Continuous criticism and ridicule of principal in regard to schedules, reports and programs.

8. Literature assigned students to read before class groups with

language used that does not meet approved moral standards."

On May 17, 1971, within the time and as authorized by Act 74, the plaintiff wrote the President of the School Board requesting "a hearing by the Board on the alleged reasons for the termination of my teaching contract, * * *. * * * and that a full record of the proceedings at the hearing be made and that a copy thereof be furnished to me. I also request that the hearing be a public hearing."

On May 19 the Board advised that a special meeting had been called for May 27, 1971, at 7:30 p. m., and that she would be granted a public hearing before the Board.

A hearing of sorts was held but the Board failed and refused to have a record made of said proceedings, and failed and refused to furnish the plaintiff a copy of said record, but instead furnished her with a document designated "Agenda," which reads as follows:

"The Mountain Pine Board of Education met for special meeting May 27, 1971 at 7:00 p. m. for the purpose of discussing Mrs. Appler's complaint of not being rehired. Members present: Mr. A. D. Brown, Mr. Walter Lynch, Mr. Arnold Ingle, Mr. Marcus Jackson, and Mr. James Thompson. For the Administration Mr. Earl Tweedle and Mr. Lynn Gaston.

"Mr. Jackson read minutes from last meeting. Mr. Brown made motion that minutes stand as read. Mr. Walter Lynch seconded, motion carried.

The Agenda Follows:

(1) Mr. Walter Lynch recommended for Mr. Tweedle to act as Moderator. Mr. Brown seconded, motion carried.

(2) Mr. Tweedle discussed the reasons for not re-hiring Mrs. Mary Appler for 71–72 school year. The reasons listed are contained herein. Mr. Tweedle stated that anyone present that wished to make any comment pro or con may do so. A number of students have an A for the first six weeks, and A for the second six weeks, and F for the third six weeks. Mrs. Appler was asked to identify the grade book and she identified the book as being the record that she kept of the students she taught. Mrs. Appler stated also that the fluctuation in the grade book that she kept were of no fault of her own. Mr. Gaston said that he was contacted by the parents of these students.

(3) Mr. Tweedle stated that normal grading procedures of a teacher of 21 years experience and a parent of 22 years experience having dealt with students and parents of students have yet seen the number of students in consistency in grades for a reporting period for a student. Mr. Tweedle read the grades of students that had the highest fluctuation.

(4) Mr. Tweedle stated that he and Mr. Gaston had conferences with teachers concerning grading practices. Mr. Gaston also stated the same thing. Mrs. Appler denied that they had any conferences concerning this matter.

(5) Conference concerning drama class January 5, 1971. Mr. Gaston discussed drama with Mrs. Appler and she stated that certain students could not attend the drama class and some were added to the class. In addition Mrs. Appler stated that 'I am not being paid for teaching drama, this is my free period. No one, principal, superintendent, or school board is going to tell me who I can teach or how I can teach this drama class.' Mrs. Appler denied the accusations that Mr. Tweedle read from the record that he kept. She stated that she could not teach the class with so many up running around.

(6) Mr. Tweedle stated that students being referred to as dumbbells was going to be erased from Mountain Pine School and that Mrs. Appler had referred to some as being 'dumbbells.'

(7) Mrs. Appler stated that she felt that she had done a good job and she had taught Moby Dick, Lord of Flies, John Hersey A. Single Pebble, The Tea House of the August Moon. These four books are listed in the Standard Catalog for high school libraries which is published by H. W. Wilson Co. These titles are selected and approved by the American Library Association and the National Council Teachers of English. They are also listed on the approved reading N.C.C.E. September 1970 Mr. Tweedle approached her that a book that she had used for the previous year was not approved by the board.

(8) Mr. Hal Robbins from A.E.A. attended this meeting and listened in on the proceedings and stated that Mrs. Appler was entitled to a copy of the minutes from the meeting and the Board agreed to furnish her with a copy.

(9) Mr. Brown made motion to adjourn. Mr. Thompson seconded, motion carried."

In the affidavit of plaintiff attached to her motion for partial summary judgment, she refers to all of the letters and proceedings at the hearing of May 27, 1971, and stated:

"Although I had requested a copy of the record made of the hearing, no record was made of the hearing, and at the conclusion thereof, I received an 'Agenda' which was not a record of the testimony at the hearing, but merely Minutes of the Meeting. The Minutes of the Meeting do not contain the testimony of the various persons who appeared at the hearing. I have never been furnished a true record of the hearing and have not been afforded the rights given me by Act 74 of 1970. I was unable to secure employment as a teacher for the 1971–72 school year."

Ark.Stat.Ann., § 80–1304(b), (1971 Supp.), provides that every teacher in the State shall be employed by written contract annually, and further provides:

"Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the school year next succeeding the date of termination fixed therein, which renewal may be made by indorsement on the existing contract instrument; unless during the period of such contract or within ten (10) days after the termination of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year, or unless the teacher during the period of the contract or within ten (10) days after close of school shall deliver or mail by registered mail to such board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties. * * * "

Act No. 74, "An Act to Prescribe a Public School Fair Employment and Dismissal Practices Act for Arkansas; and for Other Purposes," of the Acts of Arkansas, 67th General Assembly, First Extraordinary Session, became effective on March 28, 1970. Section 3 of the Act provides that when a school board terminates or dismisses a teacher, that it shall notify the teacher in writing, and if the board determines not to renew the contract of the teacher for another academic year, it shall notify the teacher thereof within 10 days after the termination of the school term.

The board may include with such notice a statement of the reasons for the termination or dismissal or for the determination not to renew the contract, and if the board does not include such a statement with the notice, the teacher may file a written request for a statement of the reasons of the board for the refusal to renew the contract, and the

board shall furnish the teacher with a written statement of the reasons for termination or dismissal or decision not to renew the contract within five days.

Section 4 provides that the teacher who is dismissed or terminated or whose contract is not renewed upon notification thereof by the school board, as set out above, may request in writing a hearing. The hearing shall be private unless the school board or the teacher requests that the hearing be public, and the teacher or the board may be represented by legal counsel. Subsection (d) of Section 4 provides:

"It shall not be necessary that a full record of the proceedings at the hearing be made and preserved unless:

\*　　\*　　\*　　\*　　\*　　\*

"(2) A request is filed with the school board by the teacher in writing at least 24 hours prior to the time set for the hearing, in which event the school board shall make and preserve, at its own expense, a record of the hearing, and shall furnish a copy thereof to the teacher without cost to the teacher."

On May 23, 1955, the court, in the case of Johnson v. Wert, 225 Ark. 91, at page 95, 279 S.W.2d 274, at page 276 said:

"The discretion of school boards in respect to the making of employment contracts with teachers is very broad. Ordinarily the board has the absolute right to decline to employ or re-employ any applicant for any reason whatever or for no reason at all. 47 Am.Jur., Schools, § 114."

In Freeman v. Gould Special School Dist. of Lincoln County, Ark., (8 Cir. 1969) 405 F.2d 1153 at page 1158, the court held:

"In Arkansas the board's right not to rehire a teacher in the school district appears to be absolute, except that the decision must not rest on grounds that are violative of constitutional or legal rights."

At page 1160 the court said:

"When a particular statutory procedure is set up for the dismissal of a teacher it must be followed, but absent statutory procedures the Board may adopt its own method."

At page 1161 the court said:

"Absent statutory or contractual requirements, persons discharged for inefficiency, incompetency, or insubordination have no constitutional right to a hearing with rights of cross-examination and confrontation of witnesses."

■ The school board is the representative of the people and should have wide latitude and discretion in the operation of the school district, including hiring and rehiring practices. Such local autonomy must be maintained to allow continued democratic control of education as a primary state function, but is subject only to clearly enunciated legal and constitutional restrictions.

In Nethercutt v. Pulaski County Special School Dist., (1972) 251 Ark. 836, 475 S.W.2d 517, the court considered a teacher-tenure policy that had been adopted by the Board effective July 1, 1968, fixing the rights of the parties in controversies between the District and teachers over hiring or rehiring practices, and held that such tenure policy did not supplant the provisions of Ark. Stat.Ann., § 80–1304(b), and concluded:

"As we construe this statute, a school board, as it may be constituted following any school election, is free to reemploy or terminate any teacher with or without cause. A school board, having only such authority as is granted it by law, cannot by the adoption of a teacher tenure policy give to a teacher a tenure beyond or greater than that authorized by the law limiting such employment to an annual contract."[1]

---

[1] The court did not mention and apparently did not consider the provisions of Act 74 hereinbefore referred to probably because the appellants were apparently relying solely upon the provisions of the teacher-tenure policy.

The only contentions of the defendant are that the procedural requirements of Act 74 were substantially complied with and that those portions of the Act which purpose to vest continuing employment tenure are unconstitutional.

 As heretofore stated, the defendant has not submitted a brief in support of its contentions, but it is quite apparent that the defendant did not substantially comply with the provisions of the Act in the conduct of the hearing of May 27, 1971.

The court cannot agree that any portion of the Act is unconstitutional. It merely outlines a procedure to be followed in determining whether under the due process clause of the Fourteenth Amendment the decision of the School Board not to retain a teacher is based wholly upon unsupported facts, or on a basis wholly without reason, or on the exercise by the teacher of a constitutionally protected right.

The Act was intended to provide a procedure for a full and complete administrative hearing on the refusal of the Board to reemploy a teacher and to preserve a complete record of such hearing. If the requirements of the Act are in good faith complied with, a court, in the event of a subsequent review, would be able to determine any claim of arbitrariness and whether the action of the Board infringed any constitutional right of the teacher, or whether the action was authorized by law and within the lawful discretion of the Board. See 405 F.2d page 1161 of Freeman v. Gould Special School Dist. of Lincoln County, Ark., supra.

Plaintiff was entitled to a hearing in the manner provided in the Act. She did not receive such a hearing, and the Board has not shown that constitutional right of due process was respected and protected. The motion of plaintiff should be sustained.

The decision of the Board was illegal. Plaintiff is entitled to an opportunity to prove the amount of damages, if any, she has sustained as a result of such decision of the Board not to rehire plaintiff for the school year 1971–72.

Under the facts, the request of plaintiff for an injunction is moot.

It is suggested that counsel for the parties confer, and if unable to determine the amount of such damages, they should advise the court in order that a date may be fixed by the court for a hearing on the question of the amount of the damages.

Judgment is being entered today in accordance with the above.