June Nannette COCHRAN, Plaintiff,

v.

The CHIDESTER SCHOOL DISTRICT OF OUACHITA COUNTY, ARKANSAS, a corporation, Melvin Orlansky, Superintendent, Willard Robinson, Edgar Charles Johnson, E. W. Sanders, Harold Stinnett and John Henry Tate, Members of the Board of Directors of the Chidester School District of Ouachita County, Arkansas, Defendants.

No. ED–76–30–C.

United States District Court,
W. D. Arkansas,
El Dorado Division.

Aug. 30, 1978.

John W. Walker, Little Rock, Ark., for plaintiff.

William I. Prewett and James M. Pratt, Jr., Brown, Compton & Prewett, El Dorado, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

This is an action by a teacher alleging that her contract of employment with the school district was terminated and not renewed by the board and officials of the district in violation of her rights under the Constitution of the United States. Jurisdiction is claimed pursuant to 42 U.S.C. §§ 1981 and 1983 and 28 U.S.C. §§ 1331, 1343 and 2201.

The complaint alleges that plaintiff, then named June Nelson, a black female, was employed by the Chidester School District for the 1974–1975 school year and was re-employed by written contract for the 1975–1976 school year as a music teacher at an annual salary of $9,150.00. It is further alleged that plaintiff was informed in writing that the Board had decided her services as a teacher were no longer desired at a meeting on April 12, 1976. Her last date of employment with the District was April 14, 1976. It is alleged that she was verbally informed that she was dismissed from her employment because she had become pregnant out of wedlock.

Plaintiff contends that the actions of the defendants and their policies and practices are in violation of the equal protection and due process clauses of the Fourteenth Amendment and that her rights of privacy have been violated. She seeks injunctive relief, reinstatement, back pay, damages for injury to her reputation, attorneys fees and costs. Defendants filed answer denying the allegations of the complaint.

On June 2, 1978, the matter came on to be tried to the Court, without the intervention of a jury, pursuant to pretrial conference and regular setting. Plaintiff was present in person and with her attorney, Hon. John W. Walker. Defendants were represented by Hon. William I. Prewett and James Pratt. The parties announced ready for trial, evidence was heard and taken, and all parties rested. Counsel were permitted a substantial time within which to file briefs with the Court as to their respective contentions. All briefs have been received and the matter is now submitted for determination by the Court.

The Court, in consideration of the pleadings, the oral and documentary evidence received, and the statements and contentions of counsel, makes the following findings of fact and conclusions of law, which are incorporated herein pursuant to Rule 52, Federal Rules of Civil Procedure:

Jurisdiction is established pursuant to 28 U.S.C. § 1343, plaintiff having alleged entitlement to damages and equitable relief under 42 U.S.C. § 1981, an Act of Congress providing for the protection of civil rights.

It is established and undisputed that plaintiff, under the name of June Nelson, was employed by contract by the Chidester School District as a music teacher for the school years 1974–1975 and 1975–1976. It is further established and undisputed that the employment contract of plaintiff with the School District was terminated by action of the Board of the District effective April 14, 1976.

Plaintiff, a then unmarried black female, became pregnant and this fact came to the attention of the superintendent and Board of the District. It is undisputed that plaintiff was teaching in a satisfactory manner. School officials did speak with plaintiff

about her pregnancy. On April 6, 1976, the School Board, at a special meeting, with W. L. Robinson, E. W. Sanders, Harold Stinnett, Charles Johnson and John H. Tate, all of the directors, being present, voted unanimously that Mr. Tolleson, the Superintendent, and Board members Sanders and Robinson "talk with Mrs. June Nelson about being pregnant and the board ask her to resign or be fired, as of April 14, 1976".

On April 9, 1976, the two Board members and the principal and Superintendent met with plaintiff. She was informed of the action of the Board and was told that she might either resign or that her contract would be terminated on April 14, 1976. She was informed that the decision had already been made. She refused to resign and was informed that her services would no longer be required.

By letter of April 12, 1976, delivered to plaintiff, she was informed by the School Board that at the April 6 Board meeting a decision was made that her services as a teacher were no longer desired. She was informed that April 14, 1976, would be the last day of her employment by the District.

Plaintiff was married on April 10, 1976, the date which had been arranged some time previously, and the subsequent birth of her child was of a legitimate child. It is not contended that plaintiff was afforded any written policy of the Board concerning any moral standards of teachers or any rules concerning sexual relations or pregnancy. It is also not contended that plaintiff was furnished with any notice of the special meeting of the School Board on April 6, 1976, which was apparently called for only two items, one the action to be taken with regard to plaintiff.

In *Moore v. Board of Education of Chidester School District No. 59*, Chidester, Arkansas, 448 F.2d 709 (8th Cir. 1971), the Court of Appeals directed that the Chidester School Board "use objective nondiscriminatory standards in the employment, assignment and dismissal of teachers" (p. 713) and that it "may also consider *established and previously announced* nondiscriminatory subjective factors in making such deci-

sions" (emphasis supplied, p. 713). That decision also involved the dismissal of a teacher on grounds of unwed pregnancy. The Court of Appeals held that the Board rested its decision to dismiss the teacher on insufficient evidence, and that the teacher should have been given notice of the charges against her *before dismissal* and an opportunity to meet such charges (p. 714).

While the Court stated that it would recognize the validity of established and announced subjective standards, it was stated that "we find it difficult to recognize the validity of the moral standards used to evaluate Ellingberg because the board, prior to integration, had never established and announced that it would use such subjective standards in determining whether to employ or dismiss teachers" (p. 714).

It was admitted by defendants that there were no objective announced standards governing the employment, assignment or dismissal of teachers, either written or orally announced, which had been adopted by the Board. The Board continues to make policy and apply "standards" in a subjective, individual and unannounced manner, despite the directions and guidelines set forth in *Moore*. It is the identical "moral" subjective standard, still unannounced, which was refused validity in *Moore*, that is sought to be applied to plaintiff herein. The Board cannot simply determine that a teacher offends some personal moral code of its members, or even some "universal code" of the community. Under *Moore*, the Board must adopt and announce, preferably in writings delivered to each teacher at the time of employment, the objective criteria which will be utilized in the decisions of the Board as to the hiring, assignment and dismissal or non-renewal of teachers.

Defendants point out that in *Sullivan v. Meade County Ind. School Dist.*, 387 F.Supp. 1237 (D.S.D.1975), and in *Brown v. Bathke*, 416 F.Supp. 1194 (D.Neb.1976), the Courts held that dismissal of teachers on "moral" grounds was permissible. The Court has reviewed these cases carefully. *Sullivan* is clearly distinguishable from the

case at bar. There, the teacher was openly living with an admitted boy friend in a house trailer owned by the School District, with the relationship openly displayed to many of the students who visited. A petition by some 140 persons demonstrated a strong community reaction.

Further, although Judge Bogue recognized that boards of education may inquire into the personal associations and fitness of teachers, the claim in that case was of lack of substantive due process. Here, there is not the slightest indication that plaintiff was afforded either procedural or substantive due process. Sullivan was given notice, an opportunity to rectify the situation, notice prior to termination, and an elaborate due process hearing. There was also a statute of the State of South Dakota which provided that a teacher could be terminated for "gross immorality". No such statute or announced policy of the School Board is involved here which would give notice to plaintiff that her employment might be jeopardized by becoming pregnant. No evidence was presented to show that her situation offended community standards or that it had affected her students or her performance adversely. Unlike the Board in *Sullivan*, the Chidester Board, without a hearing, summarily determined that plaintiff should be terminated.

Similarly, in *Brown*, Judge Urbom held that the teacher there involved had a property right in her employment for the remainder of the year, triggering the due process clause of the Fourteenth Amendment. Further, citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), he called attention to the holding of the Supreme Court that notice and an opportunity for hearing *before* termination are required to dismiss even a nontenured teacher during the contract term.

Although Ms. Brown was not given a pre-termination hearing, she was given notice prior to the action of the Board in writing that termination would be recommended. She was also told that she had a right to a hearing before the Board. A State Court held that her rights had not

been protected by a meeting of the Board held without notice to her, and required that a full due process hearing be held. Ms. Brown attended that Board hearing with counsel. The Board held that its prior action in terminating her was justified, which finding was upheld on review by the State Court. No appeal was taken from this finding. Even so, Judge Urbom, from a careful reading of the opinion, found that plaintiff's rights to due process had been violated by lack of pre-termination notice and hearing, but declined to award damages for lack of knowledge on the part of the Board members of their obligation to afford a hearing despite the lack of request by plaintiff.

Plaintiff here was never notified that she had the right to a pre-termination hearing. She was never afforded the opportunity to a due process hearing. This Board had been admonished by written directions of the Court of Appeals in a case in which the Board was a party that it must give notice of charges and an opportunity to meet such charges *before dismissal* and that it must utilize established and previously announced standards, in determining whether to dismiss a teacher for an unwed pregnancy.

Defendants cite *Appler v. Mountain Pine School District*, 342 F.Supp. 1131 (W.D.Ark. 1972) for the broad authority of a school board. A further reading of the case reveals that Judge Miller found that the school district had violated the rights of the teacher to a due process hearing by failing to preserve the record of a hearing conducted with regard to the decision of the board not to re-employ the teacher. While Act 74, Acts of Arkansas, 1970 (Ex.Sess.) (Ark. Stats.Ann. §§ 80–1243, et seq.), was upheld by Judge Miller, in *Mountain Pine*, and by the Eighth Circuit panel in *Cato v. Collins*, 539 F.2d 656 (1976), as providing due process by a post-termination hearing, neither of those cases are apposite to the circumstances now before this Court.

 In *Cato v. Collins, supra*, the Court held that a nontenured teacher is entitled to procedural due process and a pre-termination hearing only if the termi-

nation deprives the teacher of a liberty or property interest (p. 659). Plaintiff has, in this case, been clearly deprived of a property interest, the unpaid amount which she would have received under the written contract of employment with the District had she not been summarily terminated. A right to procedural due process is also triggered by the imposition of a stigma which might result in an adverse effect upon the teacher's future employment opportunities or standing and associations in the community (p. 659). An employment history of plaintiff, showing that her contract and teaching duties were terminated prior to the end of the school year, even without communication of the derogatory reasons therefor, might clearly be expected to have an adverse effect upon her future employment opportunities, and would carry a professional stigma. The Court finds that plaintiff was deprived of her liberty interest by the lack of a pre-termination hearing.

■ The basic guarantees of procedural due process have been established at least since *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to include the right of a teacher employed by a school district to a pre-termination due process hearing, where the district seeks to terminate an existing contract prior to its expiration. See also *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Buhr v. Buffalo Public School Dist.*, 509 F.2d 1196 (8th Cir. 1974); *Brouillette v. Board of Directors*, 519 F.2d 126 (8th Cir. 1975).

■ The Court, therefore, finds that Act 74, Acts of Arkansas, 1970 (Ex. Sess.), codified as Ark.Stats.Ann. §§ 80–1243 through 1248, at least insofar as the Act purports to permit and establish as sufficient a *post-termination* hearing, and then only upon the request of the teacher, does not meet the standards required for termination of an existing contract by the district. The Act has consistently been held adequate as to decisions not to renew contracts for future years under Arkansas' non-tenured teacher provisions, *Cato v. Collins, supra*, but such post-termination hearings procedures clearly do not meet the requirements

of *Board of Regents v. Roth, supra*. See *Wagner v. Little Rock School District*, 373 F.Supp. 876 (E.D.Ark.1973).

■ *Brown v. Bathke, supra*, and *Andrews v. Drew Municipal Separate School Dist.*, 507 F.2d 611 (5th Cir. 1975) present detailed considerations which might be considered by local school boards in determining policy with regard to employment of unwed parents. The cases reach different results. This Court does not reach the question whether the Chidester School Board might properly adopt a policy in the future in this regard. Having failed to adopt such a policy and communicate it to teachers in advance, and having failed to provide to plaintiff a pre-termination notice or hearing, the Board has clearly violated her constitutional rights, as meticulously set forth for this Board in the *Moore* case.

■ The individual members of the Chidester School Board who are defendants herein, are charged with notice and knowledge of the many decisions which had been handed down by the Supreme Court of the United States and lower Federal Courts prior to their action in terminating the contract of the plaintiff herein, and Act 74 is no bar or excuse precluding their individual liability. The Chidester School Board had been directly informed of the requirements for adoption and communication of policies to teachers, and the necessity for furnishing pre-termination hearing to a teacher under contract who is sought to be terminated for becoming pregnant while unwed, the exact situation in *Moore*. The requirements of *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), are met to subject the individual board members to individual liability.

The present Superintendent, Mr. Orlansky, who was not an employee of the District at the time the action was taken, and was not in any way responsible for the action of the Board, is not subject to any individual liability herein.

*Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and *Prostrollo v. University of South Dakota*, 507 F.2d 775 (8th Cir. 1974) are cited as authority that the School District, as a corporate entity, is

not a "person" as contemplated by 42 U.S.C. § 1983, and that no award may be made against the District. This Court had previously assumed these and other cases by our Court of Appeals did make school districts exempt from direct liability under § 1983. However, on June 6, 1978, the Supreme Court of the United States handed down its opinion in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. The Court directly expressed its opinion that local school boards may be held liable under § 1983 under prior law, and overruled *Monroe v. Pape* as to liability of municipalities for official policies resulting in constitutional deprivation.

The Court finds that the Chidester School District is, therefore, subject to the jurisdiction of this Court pursuant to both 42 U.S.C. §§ 1981 and 1983, and the provisions of 28 U.S.C. § 1343, and subject to both monetary damages and injunctive requirements.

The next issue to be reached is the failure of the defendants to renew the contract of plaintiff for the next school year. Under the provisions of Arkansas law, teachers do not have tenure by reason of the automatic renewal of their contracts unless they are notified of intent not to renew, *Cato v. Collins, supra*. The District, having notified plaintiff that her contract was terminated April 14, was under no obligation to again notify her pursuant to statute that the contract which they had cancelled was not to be renewed. The contract, having been cancelled, could not create any reasonable expectation in plaintiff that it would be automatically renewed. There was no contract to "renew".

Plaintiff did, in a form furnished to the State Teacher Retirement System, certify that she did not intend to engage in teaching for an extended period after her termination. She also had a new baby to attend, and had moved into another community with her new husband. She made application only to one school district for employment, and did engage in limited part-time teaching as a substitute. She did not, however, fully carry out her duty to mitigate her damages arising out of the actions of the defendants.

The Court, therefore, finds that plaintiff is entitled to an award of damages for the remaining unpaid balance under the 1975–1976 contract in the amount of $1,103.16, and in the additional amount of $7,500.00, representing damages due to the stigma and impact of the constitutional deprivation upon the plaintiff's professional future, including its impact upon her ability to obtain employment since the date of dismissal.

Plaintiff will further be awarded a reasonable amount for the services of her attorneys herein and the costs of this action. The amount of the fee for plaintiff's attorneys will be determined by the Court after counsel has furnished to the Court and counsel for defendants a detailed statement of the time and services involved, including services by previous counsel, and counsel for defendants has had an opportunity to respond thereto. The Court directs that the statement be furnished within 10 days from this date, and any response or comment by counsel for defendants be furnished within 5 days after receipt thereof. Of course, should counsel agree as to the amount, the statement will not be necessary.

Finally, the Court must consider injunctive relief. It is apparent that the Board has completely disregarded the prior orders and directions contained in *Moore,* and has completely failed in its duty to adopt and promulgate objective, nondiscriminatory standards with regard to the hiring, assignment and dismissal of teachers. Although the dismissal of plaintiff was not motivated by racial factors, her rights guaranteed by the Constitution of the United States were denied to her by reason of the failure of the Board to comply with the clear requirements in *Moore.*

It will be ordered that the Board of Directors of the Chidester School District, within thirty days from and after the date of the Order and Judgment of the Court to be entered herein, shall adopt objective, nondiscriminatory standards with regard to the employment, assignment and dismissal

of teachers, and may also adopt nondiscriminatory and reasonable, clearly defined, job-related, subjective factors and standards which may also be considered in employment, assignment and dismissal determinations. No such standard shall be applied or enforced, however, until the same has been submitted to this Court for consideration and has been on file herein for not less than 30 days after filing. At the time of filing, a copy thereof shall be posted in a prominent place available to all teachers, such as the administrative office bulletin board or the teachers' lounge, and a copy mailed to the Arkansas Education Association at its office in Little Rock, Arkansas. Unless this Court shall, within such 30 day period after filing, notify the Board that such proposed standards shall not be given effect at such time, the proposed standards may be placed in effect at the end of such 30 day period after filing with the Court.

However, no such standards may be applied or enforced unless a copy thereof, in writing, shall be given to each teacher not less than 30 days before its effective date. A copy of all such standards shall be made available to each person solicited by the School District to apply for a teaching vacancy, and to each person applying to the School District for employment.

No such standard shall be deleted, modified, or added without the filing and posting as hereinabove set out, until further Order of the Court.

The Chidester School District, its Board of Directors, its Superintendent and principals, and other supervisory employees, are directed to make recommendations and decisions as to the employment, assignment, dismissal and discipline of teachers in accordance with such written standards, as adopted, and are enjoined from applying any non-adopted or unannounced standard for such purposes, and are further enjoined from making any decision whether an existing contract between the District and a teacher shall be terminated prior to the date of termination specified therein without first giving to such teacher written notice of not less than 5 days prior to the date that such determination is to be made, and stating with specificity the charges against the teacher by reason of which the question of possible termination has been raised. The teacher shall be afforded an opportunity to appear at the meeting of the Board on the date specified, to have counsel represent the teacher, to confront and cross-examine witnesses, to call witnesses and present evidence. No determination as to termination of such teaching contract shall be made until after such hearing has been held. A record of such hearing will be made in accordance with the procedure set forth in Act 74, Acts of Arkansas, 1970 (Ex.Sess.), and made available to the teacher as specified therein. A teacher may, however, be suspended from teaching duties pending such hearing, provided that a hearing is afforded within 10 days after the date of such suspension.

The Court will retain jurisdiction over the defendant School District and School Board, until further Order of the Court, for the purpose of ensuring compliance with its Order and Judgment.

A Judgment and Order will be entered in accordance with this Memorandum Opinion.